MICHAEL E. KIRBY, Judge.

STATEMENT OF CASE

On January 12, 2005, the State of Louisiana charged John Bryant (hereinafter “Bryant”) by bill of information with one count of violating La. R.S. 14:95.1, possession of a firearm by a convicted felon. On January 18, 2005, Bryant appeared before the trial court for arraignment and pled not guilty to the charge. On March 2, 2005, the trial court heard defendant’s motion to suppress the evidence and motion to suppress statements, and held a preliminary hearing. At the close of the hearing, the trial court denied defendant’s motions and found sufficient probable cause to substantiate the charge brought against him by the State.
On March 30, 2005, the State brought its case against Bryant to trial. Prior to trial, Bryant waived the jury and elected to have his case tried before the trial judge. The State introduced four exhibits and presented testimony from two individuals. The defendant introduced no exhibits. However, Bryant testified in his defense. After the close of evidence, the trial judge found Bryant guilty of attempted possession of a firearm by a convicted felon. Immediately thereafter, _J¿the trial court sentenced Bryant to seven and one-half years at hard labor for the conviction.
The Docket Master in the record indicates that Bryant filed a motion requesting an out of time appeal. Bryant averred that his trial counsel failed to file a timely motion for appeal. A review of the record shows that Bryant’s trial counsel filed no motion for appeal. It appears that the trial court denied Bryant’s motion. Bryant sought writs from this court. This Court granted Bryant’s writ application on January 31, 2006.

STATEMENT OF FACT

Officer Arnesha Paul testified she was assigned to the First District on November 11, 2004, when she was called to respond to a report of a shooting at the Joy Motel at 2021 Leharpe Street in New Orleans, Louisiana. Upon arriving at the scene, Officer Paul testified that she and several other officers first spoke with the manager of the motel who informed them that he had heard gunshots on the first floor of the motel and then showed them the room of one of the occupants presumably involved in the shooting. Officer Paul testified that upon arriving at the room she observed blood on the door leading to the room and on the floor in front of the room. Officer Paul and the other officers then knocked on the door, and an unidentified man came out and told them that he had been shot by the housekeeper.
Upon learning this information, the officers then secured the area and asked the hotel’s manager about locating the housekeeper. The manager informed the officers that they could find the housekeeper in room 201. The officers then proceeded to room 201 whereupon they knocked on the door. A man then came Lout of room 202 and asked the officers what they were doing. The officers told the man about the shooting and asked him if he shot the victim. The man admitted to shooting the victim and then told the officers that they could find the gun in the room under a pillow on the bed. Officer Paul identified Bryant in court as the man who admitted to shooting the victim and who told the police where to find the gun. Officer Paul further testified that the hotel manager later informed them as to the presence of a surveillance video. Officer Paul identified the surveillance tape in court and testified that it showed Bryant walking up *39 to the victim, grabbing a gun from his own back pants pocket, and shooting the victim.
Officer John R. Mitchell testified that he was assigned to the First District on November 11, 2004, when he was asked to respond to a call at the Joy Motel. His testimony concerning the events leading up to Bryant’s admission mirrors the testimony given by Officer Paul. However, Officer Mitchell also identified Bryant in court as well as the .380 semiautomatic handgun retrieved from Bryant’s room.
The transcript also shows that Bryant testified in his own defense. Specifically, Bryant stated that prior to the incident, he had lived and worked at the Joy Motel for approximately three years. Bryant testified that while at the Joy Motel he acted as housekeeper, TV and air-conditioner repairman, carpenter, brick mason, electrician, and assistant manager. Bryant also noted that he had a high school diploma and served for five years and nine months in the U.S. Army, including service in the Vietnam War. Further, Bryant admitted to being a convicted felon with a conviction for possession of cocaine. Bryant admitted that one condition of his parole was that he could not be near firearms. However, Bryant testified that he did not bring the gun at issue into the hotel.
I ¿Rather, Bryant explained that on the day of the incident he was cleaning a wet mattress in Room 114 when he found that the mattress he was cleaning had a hole cut into it with a gun lodged inside the hole. Bryant testified that he removed the gun from the mattress for safety purposes and placed it in his back pocket. Bryant explained that numerous batteries and robberies had occurred at the hotel, so he wanted to take the gun out of the room and eventually store it in a linen closet where they kept other weapons.
Bryant further testified that after he left Room 114, a man came out of Room 109 holding a woman by the wrist.[1] Bryant asked the man to go back into his room as he was too loud and his actions were bothering other hotel customers. Bryant testified that the man told him in a derogatory manner to mind his own business. Bryant testified that he then went and spoke to the manager and informed them that he anticipated problems with the occupant of Room 109. Bryant then went back to Room 114 to get his equipment. As Bryant left Room 114, the man from Room 109 again came out into the hall and threatened him with trouble if he did not go away. Bryant testified that he then went back to the hotel manager to ask for help.[2] Bryant then went to go perform some work in Room 106. The man from Room 109 again came out of his room, approached Bryant, and tried to take the gun from his back pocket. Bryant testified that in the ensuing struggle the gun went off and shot the man in the leg. Bryant denied ever going into Room 109. Further, Bryant denied ever pulling the gun on the man. Rather, Bryant explained that while the surveillance video made it appear that he pulled the gun on the man he, in fact, grabbed the gun only after the man tried to take it from him. Bryant testified that | safter the incident he knew the police would be coming to the hotel, so he took the gun to his room and covered it up.
The trial court ruled that while it believed Bryant’s version of the facts, Bryant nevertheless should not have had the gun in his possession. Accordingly, the trial court found Bryant guilty of attempted *40 possession of a handgun by a convicted felon. The trial court sentenced Bryant to seven and one half years with the Department of Corrections.

ERRORS PATENT

A review of the record reveals no errors patent.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1
Defendant contends, in his sole assignment of error, that the trial court erred in permitting him to opt for a judge trial without first obtaining an adequate waiver of his right to a jury trial. The entirety of the pre-trial colloquy between Bryant and the trial court is as follows:
Trial court: How are [sic] feeling today, Mr. Bryant?
Bryant: Sore.
Trial court: You’re sore?
Bryant: Yes.
Trial court: But I mean the medicine isn’t having any affect [sic ] on you from yesterday or yesterday’s accident?
Bryant: Yes, it has an affect [sic]. I don’t hurt as much.
Trial court: You don’t what?
| ^Bryant: I don’t hurt as much.
Trial court: Oh, so you don’t hurt as much, so a positive affect [sic]. So, you’re aware of what you’re doing here today, correct?
Bryant: Yes, sir.
Trial court: And Mr. Fuller [defense counsel] has indicated that today you’ve chosen to go to trial by judge rather than jury; is that correct?
Bryant: Yes, sir.
Trial court: Have a seat, sir.
Bryant contends that the trial court failed to adequately inform him about his right to a trial by jury so that his decision to proceed with a judge trial was neither knowing nor intelligent. The State argues that the foregoing colloquy establishes that Bryant: 1) was in good health on the day of trial; 2) was represented by counsel and discussed the waiver with counsel; and, 3) decided to waive his right to a jury trial. Further, the State argues that Bryant knew he had a right to a jury trial by virtue of his prior conviction.
A review of the applicable statutory law and jurisprudence reveals that the right to trial by jury is protected by La. Const. Art. I, § 17 (1974). Further, La.C.Cr.P. art. 780 provides in pertinent part:
A. A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the court of his right to waive trial by jury.
B. The defendant shall exercise his right to waive trial by jury in accordance with the time limits set forth in |7Article 521. However, with permission of the court, he may exercise his right to waive trial by jury at any time prior to the commencement of trial.
As reiterated in comment “(a)” to La.C.Cr.P. art. 780, the waiver is to be entered at arraignment; however, the judge may accept a waiver of jury trial at any time prior to the commencement of trial. As in the case of other significant rights, waiver of trial by jury is valid only if the defendant acted voluntarily and knowingly. State v. Kahey, 436 So.2d 475, 486 (La.1983). Both the Louisiana Supreme Court and this Court have indicated that the preferred method of ensuring the right is for the trial judge to advise the defendant personally on the record of his right to a jury trial and to require the defendant to waive the right personally either in writing or by oral statement in open court on the record. See Kahey, 436 So.2d at 487; and State v. Abbott, 92-2731 (La.App. 4 Cir. 2/25/94), 634 So.2d 911. *41 Nevertheless, both the Supreme Court and this Court have rejected an absolute rule that would require the trial judge to personally inform the defendant of his right to a jury trial. Id.
Accordingly, the trial court in the present matter was not required to personally inform Bryant of his right to a jury trial. The transcript in the present matter reveals that Bryant’s counsel informed the trial court that Bryant wished to waive the jury and to proceed to trial by judge. Further, the transcript in the present matter shows that the trial court addressed Bryant personally and that Bryant confirmed that he wished to go to trial by judge rather than jury.
In Abbott, 634 So.2d at 914, the defendant argued in a pro se assignment of error that he did not knowingly, intelligently, and voluntarily waive his right to trial by jury. After reviewing the applicable jurisprudence, this Court wrote: “The transcript indicates that the trial judge was advised by counsel that the defendant |swanted to waive the jury. The judge then addressed the defendant personally, who confirmed that he sought to waive the jury. This assignment has no merit.” Id. The facts of this case are substantially similar to the facts of Abbott. In light of this observation, and the principle that the trial court is not required to personally inform a defendant of his right to trial by jury, we conclude that Bryant’s assertion that he did not knowingly-and intelligently waive his right to a trial by jury lacks merit.

CONCLUSION

For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The police report identifies the man as "Dennis Williams” while the woman is not identified in the record or the trial transcript.

. Bryant testified that he was prohibited from calling the police.